1

2

3

4

5

6

7

8                            IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   IN THE MATTER OF THE
     EXTRADITION OF

11                                             CASE NO. 08mj199 GGH

12

     JAVIER PADILLA LIZARRAGA            CERTIFICATE OF EXTRADITABLITY
13                                        AND ORDER OF COMMITTMENT

14   _____/

15   *Introduction and Summary*

16          The United States seeks to have certified to the Secretary of State the extradition

17   of Javier Padilla Lizarraga ("L").  L is accused by the government of Mexico of having

18   unlawfully (sexually) touched his minor daughter (a citizen of Mexico now residing in Mexico)

19   while his daughter was residing in the United States.  L seeks not to be so certified on three

20   grounds:

21          1.  This district court is being asked to stand in the status as an "appellate court"

22   to determine a dispute about this extradition in the Mexican court system;

23          2.  The nature of the accused conduct does not meet treaty definitions;

24          3.  Insufficient evidence exists to warrant extradition.

25   \\\\\

26   \\\\\

                                            1

1  For the reasons that follow, the undersigned certifies the extradition of L to the

2  Secretary of State.[1]

3  *Discussion*

4  L does not contest extradition on any grounds other than those set forth above.

5  Therefore, the undersigned finds that L is the person sought by Mexico for extradition, and that

6  there are no potential procedural or substantive impediments to extradition other than those

7  referenced above.  Therefore, the discussion of the facts of this case, both procedural and factual,

8  as well as the law to be applied, is best performed within a discussion of the respective issues

9  listed above.[2]

10  A.  Neither The Undersigned Nor this District Court Is Acting as an Appellate Court of a

11  Mexican Court Decision

12  Several facts are without material dispute.  After May 1998, but prior to July 19,

13  1999, the four year old daughter of L and Marsiela Madrid resided with L.  It was during this

14

15  [1] Extradition proceedings are not Article III jurisprudential proceedings. Rather, the proceedings derive from Article II of the Constitution, and have been interpreted by the Supreme Court as necessarily involving the courts.  See In re Kaine, 55 U.S. 103, 109, 14 How. 103, 14

16  L.Ed. 345 (1852); Matter of Requested Extradition of Smyth, 61 F.3d 711, 720 (9th Cir.1995) ("[E]xtradition hearings [are] conducted under the authority of a treaty enacted pursuant to

17  Article II."). Title 18 U.S.C. § 3184 provides:
Whenever there is a treaty or convention for extradition between the United States and any

18  foreign government, or in cases arising under section 3181(b), any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge

19  of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction

20  of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b) issued his warrant....

21  Magistrate judges are tasked with extradition matters in this district.  E.D. Cal. Local Rule 302(b)(8).

22

23  [2] In order to find L extraditable, the following must be shown:
(1) The court has jurisdiction over the subject matter and the fugitive;
(2) The crime for which surrender is requested is an extraditable offense covered by a valid and

24  enforceable treaty; and
(3) Competent evidence is sufficient to demonstrate probable cause that the accused committed

25  the alleged offense.
18 U.S.C. § 3184.

26  To the extent that any of these requirements are in dispute, they are discussed in the text.

2

1    time that L's alleged digital penetration took place on the daughter.  In August of 1999, when the

2    daughter again resided with her mother in Mexico, the mother went to Mexican authorities to

3    relate her daughter's complaints about a digital penetration of her vagina by her father.  After

4    several years of investigation, the Mexican prosecutor filed an indictment on June 30, 2004

5    alleging violations of "Article 261 first paragraph in relation to Article 266...."  Exhibit 1of the

6    Authenticated Documentary Evidence submitted by Mexico and the United States Secretary of

7    State (hereafter "Exhibits").[3]  In pertinent part the Articles read:

8    > Whoever without the purpose of having sexual intercourse carries out a sexual
     > conduct with a minor under the age of twelve years old or a person.....  shall be
9    > imposed a two-to-five year imprisonment penalty. [grammatical difficulties in the
     > translation]

10

11   Article 261,  Exhibit 2

12                                              ***

13   > The penalties established for sexual abuse and rape shall be increased by up to
     > half of its minimum and maximum terms when: I .... II. The crime is committed
14   > by an ascendant parent against his descendant....

15   Article 266, Exhibit 2

16   Shortly after the indictment, the Mexican Fifth District Court refused to issue an arrest warrant

17   holding that the accused was not present in Mexico, as required by Article 4 of the Federal

18   Criminal Code, and that the evidence was insufficient to warrant a finding of sexual abuse,

19   including the fact that the victim was not credible.  Exhibit 2.  This ruling was "revoked" by the

20   Mexican Fifth Unitary Court of the Fifteenth Circuit, a court which clearly found that it had

21   appellate authority over the first court.  Id.  First, it found that presence in Mexico was only

22   necessary at time of trial in order for Article 4 to be satisfied, and that there was sufficient

23   probable cause evidence to hold the defendant to answer: "[S]ince for issuing an arrest warrant it

24

25       [3]  The precise date of the indictment is unclear in that summaries of the evidence suggest
     February 20, 2002, June 30, 2003 and June 30, 2004.  The most likely date is June 30, 2004 in
26   that the Mexican case number reflected a filing date in 2004.

1  is not deemed necessary the existence of conclusive evidence to prove the responsibility of the

2  defendant, but it is deemed necessary that the requirements of Article 16 of the Constitution are

3  met and that there are some data making probable the responsibility of the defendant as it is in

4  the instant case." Exhibit 2 (grammatical difficulties in the translation).

5         Without a clear recitation of the procedural facts, either in writing or verbally[4], L

6  proceeds as if only one court in Mexico ruled on the Mexican government's request for the

7  issuance of an extradition warrant – a court that denied the Mexican government's request for

8  same.  However, the facts of this case, as provided in the authenticated United States Secretary of

9  State's documentary evidence exhibits, do not bear out the assertion.

10        It is true that when the Mexican prosecutor initially presented his request to the

11 Fifth District Court (Tijuana, Mexico), that court denied the request because it believed that the

12 court did not have jurisdiction over the alleged crimes committed in the United States by a

13 Mexican national, and that in any event, insufficient evidence of the crime warranted extradition.

14 Nevertheless, Exhibit 2 of the above referenced exhibits, demonstrates that a higher court (Fifth

15 Unitary Court of the Fifteenth Circuit) reviewed the initial decision and "revoked" the decision

16 of the lower court and ordered the arrest warrant issued.  L presents no evidence or authority that

17 the latter court was not acting in an authorized appellate capacity of some sort.  To the contrary,

18 the language used by the latter court has all the earmarks of a higher court reviewing the decision

19 of a lower court.  Moreover, L asks the undersigned to accomplish what he protests, i.e., that the

20 undersigned (in an appellate capacity) find that the latter court was without authority to revoke

21 the initial court's decision, and that the Mexican government is somehow hoodwinking the

22 United States authorities.  It would take the clearest, detailed showing of this lack of authority for

23 the undersigned to even consider L's argument.  However, L has presented *nothing* which would

24 call into doubt the latter court's authority.

25

26        [4]  The undersigned has reviewed L's filing of July 3, 2008.

This does not end the matter as the extradition treaty must also allow for the extradition of a person whose crime was not committed in the requesting country.  As established at an early hearing in this matter, the Treaty so permits.

> For an offense committed outside the territory of the requesting Party, the requested Party shall grant extradition if:
> a) its laws would provide for the punishment of such an offense committed in similar circumstances, or
> b) the person sought is a national of the requesting Party, and that Party has jurisdiction under its own laws to try that person.

Extradition Treaty (attached to the Complaint), Article I.[5]

No party disputes that both the minor and the father are nationals of Mexico.  See Exhibit 11.  The undersigned accepts the conclusion of the Mexican appellate court that it had jurisdiction under the laws of Mexico to adjudicate the criminal case.

Therefore, the first stated ground for not permitting extradition is denied.

B.  The Nature of the Accused Conduct Does Not Meet Treaty Definitions for Extradition

The elements of the crime under Mexican law were clearly spelled out in Exhibit 2:

> So, the elements defining the crime are(a) That the perpetrator carries out a sexual act in a person under the age of twelve years old or a person having no legal capacity to understand the meaning of the act or that due to any other cause....(b) without the purpose of having sexual intercourse and (c) it is committed by an ascendant parent against his descendant.[6]

The Extradition Treaty permits extradition of offenses, inter alia, listed in the Appendix to the Treaty for which the laws of the "contracting parties" the maximum penalty for which is not less than one year.  Treaty, Article 2 section 1.  In pertinent part, the Appendix,

---

[5]  While provision "a" may be problematic from a Constitutional standpoint, i.e., extraditing a citizen of the United States who is not connected to Mexico for a crime committed outside of Mexico,  provision "b" is not.

[6]  Although at this juncture in Exhibit 2, the appellate court was restating the reasoning of the trial court, the appellate court never disagreed that the stated elements were indeed correct under Mexican law.  Rather, the appellate court took the statement as a given.

1   number 5, lists indecent (sexual) assault of children as an extraditable crime:

2          Rape; statutory rape; indecent assault; corruption of minors, including unlawful
           sexual acts with or upon children under the age of consent.

3

4          California, the state which would have jurisdiction as federal jurisdiction would

5   be lacking[7], precludes the same conduct as does Mexico.  As noted in the government brief, Cal.

6   Penal Code 288(a) (as effective in 1998 and 1999) criminally punishes sexual ("lewd and

7   lacivious") acts with children under age 14 as a felony with prison terms ranging from three to

8   eight years.  See also Cal. Penal Code 289(k)(1) similarly punishing sexual penetration of the

9   genital opening of any person against her will.

10          To the extent that L argues the lack of satisfaction of the elements of the crime

11  under Mexican law, he offers no legitimate argument in that respect.  The facts, as summarized

12  below in the sufficiency section clearly show that L made unlawful penetration of his daughter's

13  vagina which could easily be seen as sexually motivated, i.e., the father used his finger inside the

14  vagina in a "scrubbing" way.  Whether L desires to claim in the future that such was accidental,

15  and not "sexual conduct" under Mexican law, is a dispute of facts and law to be decided by a

16  Mexican court.

17          If L's argument is that the laws of Mexico and the United States are too dissimilar

18  to warrant extradition under the treaty, that argument is equally unavailing.  As is usually the

19  case with extradition treaties, the Treaty in this case requires that extraditable offenses "are

20  punishable in accordance with the laws of both Contracting Parties."  Article 2.  In order to meet

21  this requirement, the offenses need not be identical in their elements, but only that the conduct is

22  punishable as a crime in both countries.  Man-Seok Choe v. Torres, 525 F.3d 733, 737 (9th Cir.

23  2008).  It takes no long discussion here to understand that lewd and lascivious acts with a minor

24  and penetration of a genital opening (California law), and that a non-intercourse "sexual act" on a

25  _____

26          [7] The federal statutes regarding sexual conduct with a minor require that the act took
    place within federal territorial jurisdiction.

1    minor (Mexican law) are the same crime given a totality of the conduct alleged.

2               L's  second ground for not being extradited is meritless.

3          C. Sufficiency of the Evidence to Permit Extradition

4               L's final argument centers on his belief that the evidence submitted by the

5    Mexican government is insufficient, under the Treaty, to warrant extradition.  L has submitted no

6    evidence on his own behalf  (which is sometimes difficult to do in extradition proceedings); thus,

7    the matter of sufficient evidence is solely dependent on a review of the evidence submitted by the

8    Mexican government.  The review standard to be used at extradition hearings is as follows:

9          The requesting country is not required to submit all its evidence, and the district
           court considers only probable cause, not whether the evidence is sufficient to
10         convict. Singh, 170 F.Supp.2d at 993. The district court determines only whether
           probable cause exists to believe the extraditee committed the charged crimes.
11         Quinn v. Robinson, 783 F.2d 776, 782-83 (9th Cir.1986). Another way of putting
           the matter is that extradition must be allowed if there is a reasonable belief that
12         the extraditee committed the crime and competent evidence supports that belief.
           Mainero, 164 F.3d at 1205.

13

14   In re Strunk, 283 F. Supp. 2d 1117, 1122 (E.D.Cal. 2003).[8]

15               There is no doubt under a comprehensive view of the evidence that there exists a

16   "reasonable belief that the extraditee committed the crime and competent evidence supports that

17   belief."  The victim told her mother what had happened, and despite L's attempt at hearing to

18   parse the translated events, the undersigned finds that she clearly related that her father

19   penetrated her vagina with his finger and used a "scrubbing" motion when inside.  Exhibit 3, 4.

20   An expert in psychology concluded that " the events described by [the daughter] and the changes

21   found in her behavioral, emotive, and physico-biological areas fit within the characteristics of a

22   victim of sexual abuse."  Exhibit 7.  A medical expert declared that "[the daughter] has marks of

23   genital violence."  Exhibit 8.  These facts obviously support a conclusion that the father made

24
_____

25         [8]In re Singh, 170 F. Supp. 2d 982 (E.D. Cal. 2001), a case within the quote was affirmed
     in part and reversed in part on other grounds in Barapind v. Enomoto, 400 F.3d 744 (9th Cir.
26   2005).

1   unlawful sexual contact with his daughter.

2          It is of no great import at this stage of the proceedings that the father denied

3   culpability before the Mexican authorities, or that the lower court thought him credible and the

4   victim lacking in credibility.  The appellate court found otherwise.

5          Sufficient evidence exists to warrant extradition.

6   *Conclusion*

7          IT IS THEREFORE ORDERED that a certified copy of this Certification of

8   Extraditability and order of Commitment be forwarded without delay by the Clerk to the United

9   States Secretary of State (attention, Legal Adviser).

10          No documentation need accompany this certified copy in that the Secretary

11   possesses the record of evidence supplied by Mexico, and the extraditee did not present any

12   testimony or evidence.

13          IT IS FURTHER ORDERED that Javier Padilla Lizarraga be committed to the

14   custody of the United States Marshal pending final disposition of this matter by the Secretary of

15   State and surrender to designated agents of the Government of Mexico.

16   DATED: 09/29/08

                                    /s/ Gregory G. Hollows
17   _____

                                    UNITED STATES MAGISTRATE JUDGE
18   ggh:gh:035
     lizarraga.ext
19

20

21

22

23

24

25

26